# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VIOLA L. HERNANDEZ,** | Case No. 3:12-cv-00758-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer, P.O. Box 421, West Linn, OR 97068. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Kathryn A. Miller, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Viola L. Hernandez seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI"). After Ms. Hernandez filed her opening brief (Dkt. 23), the

Commissioner stipulated to error and moved for an order remanding for further administrative

proceedings. Dkt. 28. Ms. Hernandez replied, arguing that the case should be remanded for a

finding of disability and the payment of benefits. Dkt. 32. For the reasons stated below, the

Commissioner's motion for remand (Dkt. 28) is GRANTED, the Commissioner's decision is

REVERSED, and the case is REMANDED for further proceedings.

OPINION AND ORDER – 1

# BACKGROUND

## A.    The Application

Ms. Hernandez protectively filed an application for SSI on February 23, 2004, alleging disability beginning on June 15, 2000. Tr. 79-81. At her first hearing in 2007, Ms. Hernandez amended her onset date to April 15, 2004. Tr. 1105. She alleges disability due to seizure disorder, degenerative disc disease, pain disorder, impaired intellectual functioning, renal vein thrombosis, and depression. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 59, 70, 238-44. A hearing was held, and on June 21, 2007, the ALJ found Ms. Hernandez not disabled. Tr. 829-909. Ms. Hernandez appealed the decision; the Appeals Council granted review, vacated the decision, and remanded the case for resolution of several issues. Tr. 913-916. A supplemental hearing was held, and on July 2, 2010, the ALJ once again found Ms. Hernandez not disabled. Tr. 25-38. The Appeals Council denied Ms. Hernandez's second request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 9-11. Ms. Hernandez seeks judicial review of that decision.

## B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (th Cir. 2011); *see also* 20 C.F.R. § 404.920;

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R.

§ 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i).
This activity is work involving significant mental or physical duties done or intended to be done
for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not
disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not
performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R.
§ 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's physical or
mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Unless expected to result in
death, this impairment must have lasted or must be expected to last for a continuous period of at
least 12 month. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the
analysis ends. 20 C.F.R. § 416.9920(a)(4)(ii). If the claimant has a severe impairment, the
analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments
listed in 20 C. F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20
C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed
impairments, then the analysis proceeds beyond step three. At that point, the ALJ must evaluate
medical and other relevant evidence to assess and determine the claimant's "residual functional
capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still
perform on a regular and continuing basis, despite any limitations imposed by her impairments.
20 C.F.R. §§ 416.920(e), 416.945(b)-(c). After the ALJ determines claimant's RFC, the analysis
proceeds to step four.

4.      Can the claimant perform her "past relevant work" with this RFC assessment? If so, then
the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform her
past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant
able to make an adjustment to other work that exists in significant numbers in the national
economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.1560(c),
416.960(c). If the claimant cannot perform such work, the claimant is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

OPINION AND ORDER – 3

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.    The ALJ's Decision**

The ALJ performed the sequential analysis in his July 7, 2010 decision. Tr. 27-38. At step one, the ALJ found that Ms. Hernandez had not engaged in substantial gainful activity since her February 23, 2004 application date. Tr. 27. At step two, the ALJ found that Ms. Hernandez's drug addiction and alcoholism, degenerative disc disease, pain disorder, borderline intellectual functioning, and renal vein thrombosis were severe impairments. *Id.* At step three, the ALJ determined that Ms. Hernandez did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. Tr. 28-30.

The ALJ next assessed Ms. Hernandez's RFC. The ALJ found that Ms. Hernandez retained the capacity to perform less than a full range of light work as follows:

> she cannot perform repetitive or prolonged kneeling or crawling. She must avoid repetitive or prolonged use of the arms for pushing and pulling activities and cannot work overhead. She is restricted to simple work with minimal public interaction.

OPINION AND ORDER – 4

Tr. 30. At step four, the ALJ determined that Ms. Hernandez's RFC rendered her unable to

perform her past relevant work. Tr. 37. At step five, based on the testimony of a vocational

expert ("VE"), the ALJ concluded that Ms. Hernandez could perform jobs that exist in

significant numbers in the national economy. *Id.* Thus, the ALJ found Ms. Hernandez not

disabled. Tr. 38.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means

"more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record and the Court may not substitute its judgment for

that of the Commissioner. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "[A] reviewing

court must consider the entire record as a whole and may not affirm simply by isolating a

specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)

(quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks

omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon

which the Commissioner did not rely. *Orn*, 495 F.3d at 630; *see also Bray*, 554 F.3d at 1225-26

(citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Ms. Hernandez argues that the ALJ erred by: (1) failing to find that her menorrhagia was

a severe impairment at step two; (2) failing to find that Ms. Hernandez met or equaled

Listing 12.05; (3) failing to identify the weight assigned to the opinion of examining physician

James Bryan, Ph.D.; (4) wrongly discrediting the opinion of treating physician Duane A.

Burroughs, M.D.; (5) finding Ms. Hernandez not fully credible; and (6) failing to give proper

weight to lay witness testimony. The Commissioner concedes that because the ALJ failed both to

identify the weight afforded to Dr. Bryan's opinion and to determine whether Ms. Hernandez's

impairments equaled Listing 12.05 this case should be remanded for further proceedings. Def.'s

Resp. Br. at 6. Because the Commissioner denies the other claimed errors, the Court will discuss

the extent to which, upon remand, the ALJ must reconsider the ALJ's treatment of

Ms. Hernandez's menorrhagia, the opinion of Dr. Burroughs, the testimony of Ms. Hernandez,

and the testimony of lay witness Tony Simington. Finally, the Court will explain why this case is

being remanded for further proceedings rather than for an immediate award of benefits.

**A.      Step Two: Menorrhagia Impairment**

Ms. Hernandez argues that the ALJ erred by failing to find that her menorrhagia is a

severe impairment at step two of the sequential analysis. The step two inquiry is the *de minimis*

screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290

(9th Cir. 1996). At step two, a Ms. Hernandez must present evidence of an impairment or

impairments which are so severe that it "significantly limits [a Ms. Hernandez's] physical and

mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Where the Ms. Hernandez

meets the *de minimis* threshold, the ALJ continues with the sequential analysis, considering the effect of all of the Ms. Hernandez's impairments, whether severe or non-severe. Social Security Ruling ("SSR") 96-9p, *available at* 1996 WL 374184 at *5. Therefore, reversible error occurs only when a severe impairment excluded at step two caused additional functional limitations not accounted for in the RFC assessment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the step two analysis was resolved in Ms. Hernandez's favor, as the ALJ continued to subsequent steps; thus, any error in neglecting to mention Ms. Hernandez's alleged menorrhagia was harmless so long as all of her impairments were considered in the RFC. *Id.* The RFC, on its face, does not reflect any consideration of specific work limitations related to Ms. Hernandez's menorrhagia. Tr. 30. Further, the Commissioner in briefing was nonresponsive to Ms. Hernandez's allegation that the ALJ erred by failing to consider menorrhagia. Based on diagnoses from several acceptable medical sources and including clinical findings, the medical record contains substantial evidence that Ms. Hernandez suffers from menorrhagia. *See, e.g.*, Tr. 666-67, 682-83, 831-32, 839-40, 939-40, 943, 986, 1019. At the hearing, the ALJ questioned Ms. Hernandez about her history of menorrhagia and some of the complications that arise from it, including pain and an inability to function for three days per month. Tr. 1129-30, 1132-35. Despite the medical evidence and the hearing discussion, it does not appear that the ALJ considered Ms. Hernandez's alleged menorrhagia impairment in formulating the RFC or in his ultimate determination. Thus, the ALJ erred.

**B.    Listing 12.05(C)**

Ms. Hernandez asserts that the ALJ erred by failing to find that her impairments met or equaled Listing 12.05(C). Commissioner concedes that the ALJ erred in his evaluation of

OPINION AND ORDER – 7

whether Ms. Hernandez's impairments equaled Listing 12.05(C), but maintains that a finding of disability is nevertheless not compulsory. Def.'s Resp. Br. at 7.

Ms. Hernandez first argues that her impairments meet Listing 12.05(C), which consists of three components: evidence of onset before age 22; a valid "verbal, performance, or full scale IQ of 60 through 70;" and a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05(C).[1]

The parties agree that the ALJ erred in finding that the "C" criteria of Listing 12.05 were "not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70." Tr. 31. Indeed, substantial evidence in the record includes a valid full scale IQ score of 70, as determined by Dr. Bryan in 2004. Tr. 31, 449. The record, however, also contains a valid full scale IQ score of 73, as determined by Donna Wicher, Ph.D. in 2002. Tr. 35, 324. The ALJ apparently chose to rely on Dr. Wicher's score in finding that Ms. Hernandez did not meet Listing 12.05C: "the claimant has a full scale IQ of 73." Tr. 30. Ms. Hernandez argues that Dr. Bryan's full scale IQ of 70 determination necessarily qualifies under the IQ component of Listing 12.05(C). As is the case with all medical opinions, it is the duty of the ALJ, not the reviewing court, to weigh conflicting medical evidence. *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ did not provide specific and legitimate reasons to discount the score determined by Dr. Bryan, which was error. The mere existence, however, of a 70 IQ score in the record does not establish a qualifying score under Listing 12.05(C), which must be

---

[1] The Commissioner cites an appellate decision from outside the Ninth Circuit, holding that a diagnosis of mental retardation is required in order to meet Listing 12.05C. Def.'s Resp. Br. at 7. That case, however, does not reflect the law in the Ninth Circuit. *See, e.g.*, *Pedro v. Astrue*, 849 F. Supp 2d 1006, 1010-11 (D. Or. 2011) ("the Eighth Circuit and several other district courts within the Ninth Circuit, including the District of Oregon, have determined that a formal diagnosis of mental retardation is not required to meet Listing 12.05C.") (citations omitted)).

weighed against other evidence that suggests non-qualifying IQ levels. *See, e.g.*, *Andrews*, 53 F.3d at 1043.

Further, the Commissioner argues that Ms. Hernandez did not establish that she had onset before age 22. The Commissioner contends that Ms. Hernandez "never attended special education classes, left school during the eleventh grade, and earned a GED." Def.'s Resp. Br. at 9. Ms. Hernandez responds that her "poor school performance" and "history of low-skill jobs" are sufficient to establish the requisite adaptive functioning impairments before age 22. Pl.'s Reply Br. at 5. Although there is little doubt that Ms. Hernandez has a history of low-skill jobs, there is some evidence that she performed "well" in school when she chose to attend. Tr. 323. Further, she was able to complete a nine-month hairdressing program after high school. Tr. 446. The ALJ did not make a specific finding on this issue, but rather ended his inquiry with the erroneous "absence" of a qualifying IQ score. Tr. 30-31. Thus, further analysis is required on this issue. Additionally, the Court notes that Commissioner does not dispute that Ms. Hernandez established the "other impairment" requirement under Listing 12.05C. Pl.'s Op. Br. at 5.

Ms. Hernandez argues, in the alternative, that even if she does not meet Listing 12.05C, her combination of impairments at least equals the listing. For the reasons discussed above, however, this Court cannot conclude that Ms. Hernandez meets or equals Listing 12.05(C) based on the record evidence. After further evaluating, and if necessary developing, the record on remand, the ALJ will be in the best position to reweigh the relevant evidence and make appropriate findings regarding Ms. Hernandez's various IQ scores, whether she has provided adequate evidence of adaptive functioning deficits before age 22, and whether the combination of all of Ms. Hernandez's impairments, including menorrhagia, meet or equal Listing 12.05C. Further, as explained below, after the opinion evidence that was erroneously rejected by the ALJ

at the hearing is properly accounted for, the ALJ will have the opportunity to reformulate an

accurate RFC to determine whether Ms. Hernandez's impairments otherwise render her unable to

maintain gainful employment.

**C.    Medical Opinion Evidence**

    **1.    Dr. Bryan**

The parties agree that the opinion evidence of Dr. Bryan was improperly evaluated

because the ALJ did not assign weight to the opinions of Dr. Bryan. In addition to the previously

discussed IQ testing, Dr. Bryan also opined that in Ms. Hernandez's "current state" she was

"unable to maintain conventional full-time employment." Tr. 454. Dr. Bryan explained that

"ongoing drug/alcohol abuse is considered a principal impediment to her adaptive functioning."

*Id.* He further noted that even though Ms. Hernandez would be considered impaired even if she

discontinued substance use, she would nonetheless be significantly less impaired if she refrained.

*Id.* Although Ms. Hernandez asserts that Dr. Bryan's opinion concerning her ability to work was

"clearly formulated in the context of absence of alcohol use," Dr. Bryan noted that

Ms. Hernandez's self-reports about substance use "cannot be verified" and are "considered

questionable in this regard." *Id.* Further, as discussed below, outstanding issues related to

Ms. Hernandez's drug and alcohol use preclude crediting as true Dr. Bryan's opinion on

Ms. Hernandez's ability to work.

    **2.    Dr. Burroughs**

Ms. Hernandez also argues that the ALJ erroneously gave "little weight" to the medical

opinion of treating physician Dr. Burroughs. Tr. 35. The ALJ determined that Dr. Burroughs'

opinion involved an issue specifically reserved for the Commissioner and also that the opinion

constituted a "blanket assessment." *Id.* An ALJ is not required to accept a physician's opinion

that is "brief, conclusory, or inadequately supported by the clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (quotation marks omitted)).

In a note dated November 18, 2006, Dr. Burroughs opined that Ms. Hernandez was "medically disabled due to severe DJD [degenerative joint disease] of the cervical spine that leads to pain on muscle spasm in the shoulder thus precluding manual labor." Tr. 520. Dr. Burroughs' note is not without evidentiary support: prior to issuing the opinion in question, Dr. Burroughs personally treated Ms. Hernandez several times during 2006. Tr. 516, 521-30, 534-35. Further, his diagnosis of degenerative changes in the cervical spine was substantiated by the MRI that he ordered in January 2007, which Rafael Silva, M.D., interpreted and used to diagnose degenerative disc disease. Tr. 31, 536. Marked limitation of motion in the cervical spine and degeneration of discs in the cervical spine was also diagnosed by Dr. Gregory Irvine, M.D., in his examination in July 2007. Both Dr. Tatsuro Ogisu and Dr. Robert Berselli also found degenerative changes in the cervical spine. Tr. 31. Finally, the ALJ found the cervical spine impairment to be severe. Tr. 27, 31. The ALJ determined that Ms. Hernandez's degenerative disc disease of the cervical spine limited her to "light work with no prolonged or repetitive kneeling or crawling" and that "[s]he must avoid repetitive or prolonged use of the arms for pushing and pulling activities and cannot work overhead." Tr. 31. Therefore, the impairments contemplated in Ms. Hernandez's RFC assessment were not substantially different from Dr. Burroughs' opinion that Ms. Hernandez is precluded from performing manual labor. Tr. 31, 521.

To the extent that Dr. Burroughs' note states that Ms. Hernandez is completely medically disabled from performing any level of gainful employment, the ultimate disability determination

is reserved for the Commissioner. SSR 96-5P, *available at* 1996 WL 374183 at *5. Although such opinions may not simply be disregarded, the ALJ provided several reasons for not adopting Dr. Burroughs' opinion. Tr. 35. The ALJ noted that Dr. Burroughs failed to provide guidance as to why the impairment precluded all work activity. *Id.* The ALJ also found that Dr. Burroughs' treatment notes were inconsistent with the doctor's opinion of complete disability:

Dr. Burroughs' treatment notes reflect that despite residual pain and limitation with repetitive motion, Ms. Hernandez retained the full range of motion in her shoulder. Tr. 521. Further, Dr. Burroughs reported that Ms. Hernandez's pain improved with medication. *Id.* Thus, the ALJ provided appropriate reasons for giving little weight to Dr. Burroughs' opinion to the extent it suggested that Ms. Hernandez was precluded from all work. SSR 96-5p at *5. Even where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample*, 694 F.2d at 642. Accordingly, the ALJ did not commit reversible error with respect to Dr. Burroughs' opinion.

**D.     Ms. Hernandez's Credibility**

Ms. Hernandez disputes the ALJ's finding that her subjective complaints cannot be found to be sufficiently credible to serve as additional evidence to support a finding of disability. Here, the ALJ's found that, because of her activities of daily living, inconsistent testimony, criminal history, noncompliance with medical treatment, and polysubstance abuse, Ms. Hernandez was not fully credible. Tr. 36.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186 at *3.

OPINION AND ORDER – 13

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Regarding the ALJ's determination of Ms. Hernandez's credibility, the ALJ found that the nature of Ms. Hernandez's past crimes presented "significant issues" regarding her veracity and truthfulness. Tr. 33. The ALJ did not err. *See generally Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that a claimant's reputation for truthfulness is a valid consideration for an ALJ to use in determining that claimant's credibility) (citations omitted). The ALJ identified two convictions for theft and one conviction for child abuse, all of which occurred several years before the adjudication period. *Id.* Ms. Hernandez argues that the ALJ did not determine whether her past crimes were felonies, and that even if they were felony convictions, they were "remote acts." Pl.'s Op. Br. at 22-23. One of Ms. Hernandez's 1998 convictions for theft was for forgery of a $7,000 check, which appears to be both a felony and an act involving a false statement, and thus a crime of dishonesty. Tr. 33; Fed. R. Evid. 609(a)(2); *see, e.g.*, *U.S. v. Bay*, 762 F.2d 1314, 1317 (9th Cir. 1984) (citations omitted). Further, the forgery conviction occurred only 6 years before the beginning of the adjudication period. Tr. 33. Therefore, the ALJ did not err in discrediting Ms. Hernandez based on her prior history of a crime involving dishonesty.

The ALJ also found that Ms. Hernandez ability to perform many daily activities suggested a level of functioning greater than what she alleged in her application and testimony. Tr. 32. Ms. Hernandez counters that her activities do not transfer to a work setting and that the ALJ failed to determine whether they were performed during a substantial part of her average day, citing *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989). In her original application, Ms. Hernandez stated that she has "no activities" and stated that in 2005 her ability to work would be interfered with because she "can't do anything." Tr. 115, 218, 250. In her 2004 application, Ms. Hernandez stated that she has no hobbies, never shops, and takes part in no social activities, doesn't "have the energy to do anything or go anywhere." Tr. 176, 178. She also stated that she is able to use public transport, can walk to destinations, and gets rides from friends. Tr. 443. As the ALJ noted, Ms. Hernandez explained that she can perform self-care activities independently, reads, plays the flute, watches television, and attends weekly bingo games with other residents in her apartment complex. Tr. 32, 352, 1122.

Ms. Hernandez further stated that she engages in shopping, cooking, cleaning, and performing personal care with assistance. Tr. 32, 444, 1123. These activities contradict Ms. Hernandez's claim that she is unable to do anything. Tr. 115, 176, 178, 218, 250. Even where activities of daily living "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Such is the case here; the ALJ offered specific, rational grounds for discrediting the claimant based on the dissonance between her alleged functional capacity and her activities.

Similarly, the ALJ found that the fact that Ms. Hernandez worked after the alleged onset date suggested that her testimony was not credible. The ALJ noted that during Ms. Hernandez's

2009 employment, she "performed light work, such as vacuuming, cleaning bathrooms, and watering flower beds," which "contrasts with the testimony she sleeps most of the day, has no activities, and does not want to go outside or be with other people." Tr. 32. Although the Ms. Hernandez's job was of limited duration and Ms. Hernandez worked only four hours per week, the ALJ found this, too, suggested a higher functional level than Ms. Hernandez alleged. Tr. 32, 1119. Thus, while her 2009 job may not evidence her ability to perform full-time work, it was not error for the ALJ to find that it contradicted her alleged inability to do any work-related activity at all. *Molina*, 674 F.3d at 1113.

The ALJ also found inconsistencies in Ms. Hernandez's testimony regarding her drug use sufficient to adversely affect her credibility. An ALJ's finding that a claimant has not been a reliable historian or "present[ed] conflicting information about her drug and alcohol usage" is a valid reason for discrediting her testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ noted that Ms. Hernandez reported to Dr. Bryan that "she had never used marijuana or cocaine," although her earlier drug tests were positive for cannabis and cocaine metabolites. Tr. 33, 447. Ms. Hernandez also denied abuse of marijuana and cocaine. Tr. 447. Dr. Bryan opined, however, that it was "unclear to what extent her inconsistencies in her reporting of drug and alcohol usage relate to denial, active avoidance, and/or comprehension difficulties." Tr. 447-48.

On the other hand, before the ALJ Ms. Hernandez did not deny drug or alcohol use; rather, she admitted to using methamphetamine for ten years, and current as well as past abuse of alcohol. Tr. 447. Thus, Ms. Hernandez's reports to Dr. Bryan were somewhat ambiguous. It is the ALJ's duty, however, to resolve such ambiguities, so long as the ALJ's conclusions are supported by record evidence and inferences reasonably based on the record. *Batson*, 359 F.3d

at 1193. The ALJ's finding that Ms. Hernandez's testimony regarding her substance use was inconsistent was based on rational inferences drawn from evidence in the record, and, therefore, not erroneous.

The ALJ also considered Ms. Hernandez's credibility in light of her failure to attend medical appointments and abide by her prescribed medication regimen. Tr. 33. "Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a factor the ALJ may consider in weighing a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "where a claimant provides evidence of a good reason for not taking medication for her symptoms" -- such as financial obstacles -- it is improper to reject that testimony for failure to do so. *Smolen*, 80 F.3d at 1284. During the period of adjudication, the ALJ reported that Ms. Hernandez missed five appointments with an anticoagulation clinic and two others with her primary care provider. Tr. 33. During the same time period, Ms. Hernandez explained that she missed some appointments due to lack of transportation. Tr. 581, 583, 585. She further explained that lack of transportation made attending appointments was difficult for her and that she would require assistance with medical transportation in order to continue treatment. Tr. 581, 585.

The record also indicates that Ms. Hernandez was confused at times about which pills she was supposed to take and that at times she could not afford to purchase her medications. Tr. 581, 588. The record reflects at least one instance of Ms. Hernandez collecting cans in order to pay for her medication. Tr. 844. Further, it does not appear that the ALJ considered whether Ms. Hernandez's borderline intellectual functioning factored in her inability to appropriately manage her prescribed medications and their dosages. Although these factors are not necessarily dispositive, it was error for the ALJ not to evaluate and discuss these possible reasons for

OPINION AND ORDER – 17

Ms. Hernandez's absence at just a handful of appointments over an adjudication period that lasted many years and her occasional failure to follow through on her medication purchases despite the evidence that she faced substantial financial barriers. Therefore, these were not clear and convincing reasons for discrediting her testimony.

In sum, although not all of the ALJ's reasons for questioning Ms. Hernandez's credibility were valid, the majority of the ALJ's rationales were legitimate. A court need not uphold all of an ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision. *Batson*, 359 F.3d at 1197. Such is the case here; the ALJ's ultimate credibility determination, therefore, does not constitute reversible error.

**E.      Lay Witness Testimony**

Ms. Hernandez alleges that the ALJ erred by discrediting the lay testimony of Tony Simington, who provided information regarding Ms. Hernandez's impairments in February 2002 (Tr. 126-37) and April 2004 (Tr. 188-96). Tr. 36. The ALJ stated that Mr. Simington's statements were "considered with caution" because he had a personal relationship with Ms. Hernandez, and that he lacked the expertise and motivation to offer objective assessments. *Id.* The ALJ also stated that Mr. Simington's observations only warranted limited weight because they were inconsistent with Ms. Hernandez's statements. *Id.*

In order to disregard the testimony of a lay witness, the ALJ must provide reasons that are germane to that witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Rejection of a lay witness for the sole reason that the witness has a "personal relationship" with a claimant would, as Ms. Hernandez argues, eviscerate the requirement that the Commissioner consider lay testimony because nearly all lay witnesses have such a relationship. Pl.'s Op. Brief at 7; *see also Dodrill*, 12 F.3d at 918-19. It is acceptable, however, to consider a lay witness' relationship to a

claimant as a factor in assessing credibility, if the testimony is inconsistent with a claimant's own testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Here, the ALJ's found that Mr. Simington's testimony contradicted Ms. Hernandez's because she reported that she "performs arts and crafts and does some household chores independently . . . attends medical appointments . . . shops in stores for groceries and performs all basic self-care activities independently . . . reads, plays the flute, and watches television." Tr. 36. Mr. Simington reported in 2002 that Ms. Hernandez performed no arts or crafts, did not do any household chores, needed to be reminded to take medications, no longer played the flute, and rarely watched television. Tr. 131-36. In 2004, Mr. Simington reported that Ms. Hernandez did no chores, needed to be reminded to take medications, had no hobbies or activities, did not need assistance with personal care, and watched television. Tr. 188-92. Thus, some of Mr. Simington's observations contradicted Ms. Hernandez's, and some of Mr. Simington's observations were inconsistent between his own two reports, albeit at different time periods. The reasons provided by the ALJ for affording Mr. Simington's testimony limited weight were germane to him, and the ALJ did not commit reversible error.

## F.    Remand

The parties agree that certain errors in the ALJ's analysis require a remand. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on utility: a remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v.*

OPINION AND ORDER – 19

*Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a Ms. Hernandez is disabled under the Act. *Id.* at 1138.

Pursuant to the credit-as-true doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the Ms. Hernandez disabled were such evidence credited. *Id.* The credit-as-true doctrine is not a mandatory rule in the Ninth Circuit, but it leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 1151, *rev'd en banc*, 947 F.2d at 348). Remanding for an immediate award of benefits under the credit-as-true doctrine is not appropriate if, after crediting the evidence in question, there remain "outstanding issues that must be resolved before a proper disability determination can be made." *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)).

As discussed above, the ALJ erroneously discredited the opinion of one of the physicians in this case. Even if the opinion of Dr. Bryan were considered, however, his opinion must be interpreted and weighed against other evidence in the record, and it is the ALJ, not the Court, who is responsible in the first instance for determining credibility, resolving conflicts in the medical testimony, and addressing any ambiguities in the record. *See Reddick*, 157 F.3d 715 (citation omitted). In addition, medical records submitted to the Appeals Council include several references to recent alcohol and illicit drug use by Ms. Hernandez that were not considered by

OPINION AND ORDER – 20

the ALJ at hearing. *See, e.g.*, Tr. 963, 993, 1004, 1019, 1055. If, on remand, the ALJ finds Ms.

Hernandez disabled but that evidence in the record suggests a substance use disorder, the ALJ

must also determine if the substance abuse is a material contributing factor to the finding of

disability. 20 C.F.R. § 416.935. If the ALJ finds that Ms. Hernandez is disabled but that her

substance use is a contributing factor material to her disabling condition, she would be

disqualified from receiving benefits. 42 U.S.C. §§ 423(d)(2)(C), 1382(a)(3)(J).

      Generally, when a court does not affirm the agency's decision, "the proper course, except

in rare circumstances, is to remand to the agency for additional investigation or explanation."

*Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). In this case, the Court recognizes that

Ms. Hernandez's application for benefits has been before two ALJ's and has been to the Appeals

Council twice; however, regardless of the ALJ's errors, awarding of benefits in not appropriate

unless a claimant actually establishes disability under the Act. *See Strauss*, 635 F.3d at 1138.

Based on the foregoing, a number of complex factual issues remain unresolved, precluding an

immediate disability determination. Therefore, the proper course is to remand this case for

further proceedings consistent with this opinion.

## CONCLUSION

      The Commissioner's decision that Ms. Hernandez is not disabled is not based on

substantial evidence; the Commissioner's motion for remand (Dkt. 28) is GRANTED, the

Commissioner's decision finding is REVERSED, and the case is REMANDED for further

proceedings consistent with this Order.

      DATED this 24th day of December, 2013.


                              /s/ Michael H. Simon
                              Michael H. Simon
                              United States District Judge

OPINION AND ORDER – 21